# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER A. REESE, | ) |
| Petitioner, | ) |
| vs. | ) Case No. 12-3128-CV-S-BCW-P |
| TROY STEELE, | ) |
| Respondent. | ) |

**OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS
AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

Petitioner, Christopher A. Reese, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on February 21, 2012, seeking to challenge his 2005 conviction and sentence for second degree class A felony murder, which were entered in the Circuit Court of Greene County, Missouri.

The petition raises two grounds for relief: (1) that the trial court erred in "giving instruction No. 6 over [petitioner's] objection;" and (2) that petitioner was "denied his right to post-conviction counsel." Respondent contends that the petition should be dismissed as time-barred and that all grounds are without merit. Because this case presents an example in which "it is considerably easier and thus more judicially efficient to affirm on the merits than to untangle the complexities of the timeliness issue," this Court will address the merits of petitioner's grounds for relief. Jones v. Bowersox, 28 Fed. Appx. 610, 611 2002 WL 215523, **1 (8th Cir. Feb. 13, 2002).

**SUMMARY OF THE FACTS**

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> [Petitioner] and Matthew Nelson were together at different locations
> in Springfield, Missouri, the evening of May 6, 2004. They were

together at the Johnson's One Stop shortly after 10:00 p.m. [Petitioner] entered the store immediately after Nelson. They both were at a night club, Remington's, shortly before 11:00 p.m. [Petitioner] entered Remington's immediately after Nelson. Both were recorded on surveillance videos at each location. [Petitioner] and Nelson each left Remington's at 1:11 a.m., May 7. Nelson left with an unidentified black female. Defendant left with Shellee Watkins, the victim of the murder charge that is the subject of this appeal.

At 1:49 a.m., Nelson and [petitioner] were once again at Johnson's One Stop. Again, [petitioner] entered the premises immediately after Nelson. They stood by one another while inside the store, and, on the surveillance video tape, appeared to talk to one another. [Petitioner] had a red cd player with him. n. 2. [Petitioner] and Nelson left the store at 1:54 a.m. [Petitioner] left first, followed by Nelson. Shellee Watkins entered the store at 1:55 a.m., made a purchase, and left a few seconds later.

> n. 2 [Petitioner] later denied having a CD player. There was evidence that Shellee Watkins had a red portable CD player with her and that it was found, broken, at the location where she was killed.

Following reports of seeing what appeared to be someone lying in an alley in the area of North Glenstone and Florida, Officer John Stuart of the Springfield Police Department found a body. He arrived at the scene at 2:49 a.m. The body was lying between a car and a building. It was later identified as Shellee Watkins.

The report of a body in the alley was made by Jonathan Whitsell. Whitsell was working at a Wal-Mart store at Kearney and Glenstone on the north side of Springfield. His shift ended at 10:30 p.m. He and a friend often went to Ozark Fitness Center on the south side of Springfield after he finished his work shift. They went to the fitness club at about 1:00 a.m. the morning of May 7. While at the fitness club, Whitsell talked to a worker at the club about a new fitness facility that was being built on the north side of town at the intersection of Glenstone and Florida.

Whitsell decided to drive by the building after he finished his workout. He wanted to see the size of the building and the size of the new gym. It was about 2:45 a.m. when he got to the area of the new building. He drove down an alleyway on the backside of the building

where he saw a vehicle and what appeared to be a person lying next to the vehicle. He thought the person was sleeping until he looked back after he had passed the vehicle. He saw what looked to be blood. He explained, "Maybe the person was injured. And so then I pulled around and faced my headlights on the person." The person appeared to have been injured. Whitsell saw "a lot of bleeding from the face."

Whitsell "hit the horn a little bit" but observed no movement. He drove to a location where he could call police, called 911, and returned to the alley. Officer Stuart was at the scene when Whitsell returned. Paramedics arrived shortly thereafter. Shellee Watkins was declared dead at the scene. A subsequent autopsy determined the cause of death as exsanguination– the action of losing blood– due to blunt injury of the head due to an assault.

During the course of the investigation, officers learned that Ira Andy Farmer, a disposal service employee, and Elma Beth Tatum, a United Parcel Service driver, had observed the area where Shellee Watkins was found during the early morning hours of May 7, 2004. The area was within the route Farmer serviced. His route records indicated that he passed the alley between 2:10 and 2:15 a.m. He noticed a parked car in the alley where Shellee Watkins was later found. He believed there were two people in the car; that they were engaged in sexual intercourse. He saw a person in the car facing the back of the car with shoulders slumped and wearing a light tan or yellow shirt. Farmer contacted the police after hearing a radio report about the murder. He identified the car parked in the alley alongside Shellee Watkins' body as the car he had seen at that location earlier that morning.

Elma Beth Tatum passed the alley at about 2:40 a.m. She explained what caught her attention:

> First thing that caught my attention was there was two cars parked. As I was approaching the alley, I could see two cars parked there and there's never any vehicles there so that drew my attention. As I got up to the alley, almost across from it, I could see the two cars, someone laying on the ground and a person standing facing the east, so would have been a profile to me.

The cars were facing north, one directly behind the other. The person

-3-

Case 6:12-cv-03128-BCW   Document 23   Filed 09/21/12   Page 3 of 9

standing was a black male, approximately 5'6" or 5'7". His clothing was tan or light brown. She thought his pants were light brown or tan; that the shirt was striped, "looked like a light color and a light tan." Photographs from the security cameras at Remington's and Johnson's One Stop show [petitioner] wearing a light colored shirt with a pattern made up of vertical and horizontal stripes.

Instructions Nos. 5 and 6 were given to the jury. They state:

### INSTRUCTION No. 5
A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

### INSTRUCTION No. 6
If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about May 7, 2004, in the County of Greene, State of Missouri,

the defendant or Matthew Nelson caused the death of Shellee C. Watkins by striking her in the head,

and

Second, that defendant or Matthew Nelson was aware that his conduct was causing the death of Shellee C. Watkins,

and

Third, that defendant or Matthew Nelson did not do so under the influence of

sudden passion arising from adequate cause,

then you are instructed that the offense of murder in the second degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

-4-

> Fourth, that with the purpose of promoting or furthering the commission of that
>
> murder in the second degree, the defendant acted together with or aided Mathew [sic] Nelson in committing the offense,
>
> then you will find the defendant guilty of murder in the second degree.
>
> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
>
> As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Shellee Watkins which passion arose at the time of the offense. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair a person's capacity for self control.

(Respondent's Exhibit 11, pp. 1-3).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In ground 1, petitioner contends that the trial court erred in using Instructions Nos. 5 and 6 over petitioner's objections because, read together, the instructions misled and confused the jury. Review of this claim is extremely deferential to the state courts. Constitutionally sufficient evidence exists to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

On direct appeal, the Missouri Court of Appeals disposed of this claim as follows:

> [Petitioner] presents one point on appeal. He argues that the trial court erred in giving Instruction No. 6 over his objection "because that instruction was broader in scope than the evidence presented... in that Instruction No. 6 had the potential for misleading and confusing the jury because there was no evidence that [petitioner] 'acted together with or aided Matthew Nelson' in committing the offense of second degree murder."
>
> *State v. Thompson*, 112 S.W.3d 57 (Mo. App. 2003), explains:
>
>> "The basic principle applicable to the submission of instructions is that they should not be given if there is no evidence to support them. Instructions must be supported by substantial evidence and reasonable inferences to be drawn therefrom. Instructions which are at variance with the charge or which are broader in scope that the evidence are improper unless it is shown that an accused is not prejudiced thereby." *State v. Daugherty*, 631 S.W.2d 637, 639-40 (Mo. 1982) (internal citations omitted) (overruled on other grounds by *State v. Baker*, 636 S.W.2d 902, 904 (Mo. banc 1982).
>
> *Id.* at 69. "[A] court can instruct a jury on alternative theories as long

-6-

as each is supported by evidence. *State v. Howard*, 896 S.W.2d 471, 492 (Mo. App. 1995).

There was evidence at trial that [petitioner] and Matthew Nelson were together during the evening before the murder. There was evidence that they were together after the time of death. There was evidence that they both had blood on them; that after Shellee Watkins was killed they went to Johnson's One Stop and, after that, to [petitioner's] residence where they changed clothes. "Companionship before and after an offense is a circumstance from which one's participation in the crime may be inferred." *State v. Parsons*, 152 S.W.3d 898, 905 (Mo. App. 2005).

Ira Andy Farmer saw two people he thought were engaging in sexual intercourse in the front seat of Shellee Watkins' car. He described the shirt of the person whose back he saw. The description fit that which [petitioner] was wearing. After Farmer was at the area where the car was parked, Elma Beth Tatum passed nearby and saw a second car at the scene. She saw someone lying on the ground and someone standing by the body.

[Petitioner] testified that Matthew Nelson arrived after he and Shellee Watkins had engaged in sexual intercourse. [Petitioner] stated that Matthew Nelson killed Shellee Watkins. He admitted leaving the scene with Nelson, going to Johnson's One Stop, and then to [petitioner's] residence where he and Nelson changed clothes; that they were spattered with blood.

There was evidence that on March 4, 2004, Shellee Watkins had participated in a drug buy from Matthew Nelson as an unwitting assistant to an undercover police officer that led to Nelson's arrest; that her testimony against Matthew Nelson would be damaging to him.

The jury may accept or reject any part of any witness' testimony. *State v. Gilpin*, 954 S.W.2d 570, 579 (Mo. App. 1997). "The 'credibility and the effects of conflicts or inconsistencies in testimony are questions for the jury.'" *Id.* (quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). "It is for the jury, not the appellate court, to weigh the liability and credibility of the witnesses." *Gilpin, supra.*

On the basis of the evidence produced, the jury could have believed that [petitioner] aided and promoted or furthered the murder of Shellee Watkins by luring her and keeping her at the alley where

> Nelson later appeared; that he did so in furtherance of Nelson committing the act of murder or that [petitioner] committed the act of murder in furtherance of the wishes of Nelson. The evidence that would permit a jury to so find supports the giving of Instruction No. 5 that establishes alternate theories regarding the acts that produced the death of Shellee Watkins. [Petitioner's] point is denied.

(Respondent's Exhibit 11, pp. 4-5).

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412 (2000).[2]

Ground 1 is denied.

## GROUND 2

In ground 2, petitioner contends that he was denied his right to post-conviction counsel. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i); see also Christenson v. Ault, 598 F.3d 990, 995-96 (8th Cir. 2010) ("There is no federal constitutional right to the effective assistance of post-conviction counsel.") (citation omitted).

---

[2]According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413, 120 S.Ct. at 1523.

Because Ground 2 is not cognizable under Section 2254, it will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

(2) this case is dismissed with prejudice;

(3) the issuance of a certificate of appealability is denied; and

(4) all pending motions are denied as moot.

    /s/ Brian C. Wimes
BRIAN C. WIMES
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   September 21, 2012.